IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADRIAN THOMAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22-cv-1105-NJR |
| ) | |
| ANTHONY WILLS, FRANK ) | |
| LAWRENCE, KEVIN REICHERT, ROB ) | |
| JEFFREYS, JOHN DOE #1 (Tactical ) | |
| Team Officer), JOHN DOE #2 (Tactical ) | |
| Team Commander), JOHN DOE #3 ) | |
| (Tactical Team Officer), JOHN DOE#4 ) | |
| (Tactical Team Officer), JOHN DOE #5 ) | |
| (Tactical Team Officer), and JANE DOE ) | |
| #1 (Nurse), ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Adrian Thomas, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Thomas's original Complaint sought to allege an Eighth Amendment deliberate indifference to medical needs claim but was dismissed because he sued only "tactical team officers" in a generic fashion which did not provide notice to any potential defendants. In the Amended Complaint, Thomas again alleges defendants violated his Eighth Amendment rights by denying him access to a bathroom during a shakedown by the tactical team.

1

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Amended Complaint

In his Amended Complaint, Thomas makes the following allegations: On August 17, 2021, at 9:20 a.m., the tactical team with the wardens of the facility entered the west cellhouse for a shakedown (Doc. 10, p. 3). Prior to the shakedown, the plumbing in the cells was shut off. John Doe #1 Tactical Officer approached Thomas's cell, and Thomas asked if he could use the restroom because he was on medication that made him use the bathroom frequently. John Doe #1 refused Thomas's request, informing him that the wardens stated that inmates were not allowed to use the washroom before or after being cuffed.

John Doe #1 escorted Thomas down the gallery and past the wardens. Thomas yelled that he was on prostate medication and had frequent bowel movements (*Id*. at p. 4). After exiting the cellhouse he saw John Doe #2 Tactical Team Commander, and he again tried to explain his medical condition and need to use the bathroom (*Id*.). John Doe #2 stated that he did not care about Thomas's condition and that he should not have come to jail if he was worried about his health. Thomas was then placed in the chapel where he inquired of John Doe #3 if he could use the washroom given his medical condition (*Id*.).

2

John Doe #3 refused his request. He later asked John Doe #4 for access to the washroom, but his request was refused and he was threatened with punishment (*Id.*). Thomas also asked Jane Doe #1 nurse about accessing the washroom, but she informed him he did not have a medical condition (*Id.* at p. 5). Thomas kept requesting access to the bathroom, and John Doe #5 eventually made Thomas stand up and face the wall as punishment for his requests (*Id.*). Thomas then defecated and urinated on himself (*Id.*). The John Doe officers laughed at him and called him names (*Id.*). They continued to refuse him access to the washroom, and Thomas was forced to sit in his bodily fluids for hours.

Thomas further alleges that Wills, Lawrence, Reichert, and Jeffreys were aware of the tactical officers' actions but failed to correct their actions and encouraged them (*Id.* at p. 6). He alleges that they were aware that the tactical team violates inmate's constitutional rights due to prior lawsuits involving the tactical team and that they were policy makers who allowed an unwritten policy of the tactical team using excessive force on inmates (*Id.* at pp. 1-2).

## Preliminary Dismissals

To the extent Thomas alleges that John Doe #'s 1-5 used excessive force against him, that claim is **DISMISSED without prejudice**. There are no allegations to suggest that any of the defendants physically touched him or that they intentionally used force against him. *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) ("not every malevolent touch by a prison guard gives rise to a federal cause of action"); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).

Further, to the extent that Thomas alleges that wardens and IDOC officials, including Anthony Wills, Frank Lawrence, Rob Jeffreys, and Kevin Reichert were aware of the use of excessive force by the John Does through prior lawsuits—and created a policy allowing these actions to take place—Thomas fails to state a claim. Although he alleges that these officials allowed the excessive force to take place, he fails to state an excessive force claim. Thomas argues that because he is a class member in the pending case *Ross v. Gossett, et al.*, Case No. 15-cv-309-SMY (S.D. Ill.), the officials were on notice of how tactical team members behaved during cell shakedowns. But the *Ross* case deals with shakedowns which subjected class members to humiliating and unsanitary strip searches and line movements, uncomfortable and painful handcuffing, and extended hours of uncomfortable standing or sitting. *See Ross*, Case No. 15-cv-309-SMY, Doc. 519, p. 9 (S.D. Ill. Mar. 26, 2020). There is no indication in the Order allowing the class action to proceed in that case that tactical team members were deliberately indifferent to a prisoner's medical needs during a shakedown. Further, there is no indication that the officials were present at the prison during the shakedowns—which would give them knowledge of the proceedings. Thus, Thomas fails to state a claim against the named officials.

## Discussion

Based on the allegations in the Amended Complaint, the Court designates the following count:

**Count 1:** **Eighth Amendment deliberate indifference claim against John Doe #'s 1-5 and Jane Doe Nurse for refusing Thomas**

**access to the restroom despite having a serious health condition.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Thomas states a viable deliberate indifference claim against John Does #'s 1-5 and Jane Doe Nurse. Although Thomas does not state a claim against Anthony Wills, he will remain in the case (in his official capacity only) for the purpose of responding to discovery aimed at identifying the unknown Defendants.

## Disposition

For the reasons stated above, Count 1 shall proceed against John Doe #'s 1-5 and Jane Doe Nurse. Rob Jeffreys, Anthony Wills, Frank Lawrence, and Kevin Reichert are **DISMISSED without prejudice**. Anthony Wills (in his official capacity only) will remain in the case for the sole purpose of identifying the unknown individuals.

The Clerk of Court shall prepare for Defendant Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to Defendant

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Wills's place of employment. If Wills fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on him, and the Court will require him to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Because Wills is in the case only to respond to discovery, he need not file a responsive pleading. Once counsel has entered an appearance on his behalf, the Court will enter an Order with specific instructions regarding discovery of the John Does.

If judgment is rendered against Thomas, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Thomas is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

    **IT IS SO ORDERED.**

    DATED:  November 30, 2022

                                                               **NANCY J. ROSENSTENGEL**
                                                               Chief U.S. District Judge

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**